CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
GABRIELA RIVERA (Bar No. 283633)
(E-Mail: gabriela_rivera@fd.org)
RYAN SHELLEY (Bar No. 337528)
(E-Mail: ryan_shelley@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
JACOB DANIEL TERRAZAS

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JACOB DANIEL TERRAZAS,<br><br>Defendant. | Case No. 25-cr-00500-PA<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS FOR VINDICTIVE PROSECUTION; DECLARATION OF COUNSEL; EXHIBITS**<br><br>**Hearing Date**: November 3, 2025<br>**Hearing Time**: 3:00pm |

Jacob Daniel Terrazas, by and through his counsel of record, Deputy Federal Public Defenders Gabriela Rivera and Ryan Shelley, hereby moves this Honorable Court for an order dismissing the indictment.

//

//

This motion is based on the attached Memorandum of Points and Authorities, declaration of counsel, exhibits, and all files and records in this case. Mr. Terrazas further requests an evidentiary hearing on this matter.

                Respectfully submitted,

                CUAUHTEMOC ORTEGA
                Federal Public Defender

DATED: September 29, 2025    By  /s/ Ryan Shelley
                GABRIELA RIVERA
                RYAN SHELLEY
                Deputy Federal Public Defenders
                Attorneys for JACOB DANIEL TERRAZAS

## **TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................3

II. STATEMENT OF FACTS ..................................................................................3

    A.    The government files a criminal complaint charging Mr. Terrazas with assault on a federal officer. ............................................................................3

    B.    The government moves to dismiss the complaint and files a misdemeanor information again charging Mr. Terrazas with assault on a federal officer. ............................................................................................4

    C.    Mr. Terrazas consents to proceed before a magistrate judge in his misdemeanor case. ............................................................................................4

    D.    The government obtains an indictment charging Mr. Terrazas with a felony count of assault on a federal officer, nullifying his election to proceed before a magistrate judge and exponentially increasing his sentencing exposure. ............................................................................................5

III. ARGUMENT .....................................................................................................6

    A.    Due Process protects criminal defendants from government retaliation for exercising constitutional, statutory, and procedural rights. ....................6

    B.    The circumstances and timing of the government's decision to charge Mr. Terrazas with a felony raises the appearance of vindictiveness. ..........8

    C.    The government cannot rebut the presumption of vindictiveness. ............12

IV. CONCLUSION .................................................................................................12

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Adamson v. Ricketts*,
  865 F.2d 1011 (9th Cir. 1988) (en banc) ............................................................*passim*

*Blackledge v. Perry*,
  417 U.S. 21 (1974) ................................................................................................. 6

*Bordenkircher v. Hayes*,
  434 U.S. 357 (1978) ............................................................................................... 6

*United States v. Garza-Juarez*,
  992 F.2d 896 (9th Cir. 1993) ......................................................................... 3, 7, 8

*United States v. Goodwin*,
  457 U.S. 368 (1982) ............................................................................. 6, 7, 11, 12

*United States v. Groves*,
  571 F.2d 450 (9th Cir. 1978) ................................................................................. 7

*United States v. Jenkins*,
  504 F.3d 694 (9th Cir. 2007) ..................................................................... 7, 10, 11

*United States v. Ruesga-Martinez*,
  534 F.2d 1367 (9th Cir. 1976) ......................................................................... 8, 10

**Federal Statutes**

8 U.S.C. § 1325 ............................................................................................................ 10

8 U.S.C. § 1326 ............................................................................................................ 10

18 U.S.C. § 111 ............................................................................................... 3, 4, 5, 6

18 U.S.C. § 3161 ........................................................................................................... 4

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

For decades, courts have held that a person facing criminal charges must be free to exercise constitutional, statutory, or procedural rights without apprehension of prosecutorial vindictiveness. When the government "file[s] increased charges directly follow[ing] the assertion of a procedural right," and those charges "are based on the same conduct" as the original charges, there is at least the "appearance of vindictiveness." *United States v. Garza-Juarez*, 992 F.2d 896, 907 (9th Cir. 1993). Those circumstances trigger a "presumption of vindictiveness," and courts shift the burden to the government to "dispel the appearance of vindictiveness." *Id.* at 906 (quoting *United States v. Gallegos-Curiel*, 681 F.2d 1164, 1168 (9th Cir. 1982)).

The superseding indictment here was (at least) apparently vindictive, and the government should be called to answer for it. Having charged Mr. Terrazas with a misdemeanor and acknowledged before this Court that Mr. Terrazas alone had the right to insist that his case proceed before a magistrate judge, the government then nullified the exercise of that right by increasing the charge against him from misdemeanor to felony—despite the fact that the government relied on the same conduct, theory of prosecution, and evidence that it had all along. Accordingly, the burden shifts to the government to rebut the presumption of vindictiveness by producing objective evidence justifying its conduct, which all available information suggests it cannot do. For the reasons explained below, the Court should dismiss the indictment.

## II. STATEMENT OF FACTS

**A.     The government files a criminal complaint charging Mr. Terrazas with assault on a federal officer.**

On June 8, 2025, the government filed a criminal complaint against Mr. Terrazas, charging a violation of 18 U.S.C. § 111, assault on a federal officer. Dkt. No. 1. The complaint alleges that Mr. Terrazas was "one of several individuals that was actively throwing hard objects . . . towards [border patrol] agents" at a protest on June 7, 2025.

1  *Id.* at 4. It further alleges that, at some point during the protest, one of the border patrol
2  agents "felt . . . remnants of cinderblock impact his left shin," causing bleeding. *Id.* The
3  complaint does not allege that Mr. Terrazas threw the piece of cinderblock that struck
4  the agent's shin. *See id.*
5      Border patrol agents arrested Mr. Terrazas at the scene, setting the deadline for
6  the government to file an information or obtain an indictment at July 7, 2025. *See* 18
7  U.S.C. § 3161(b). Mr. Terrazas made his initial appearance on the complaint on June 9,
8  2025. Dkt. No. 4. A preliminary hearing was scheduled for June 23, 2025. *Id.*
9  **B.   The government moves to dismiss the complaint and files a**
10     **misdemeanor information again charging Mr. Terrazas with assault on**
11     **a federal officer.**
12     On June 18, 2025, the government moved to dismiss the complaint, and the
13  magistrate court did so the same day. Dkt. Nos. 18, 29. Also that day, the government
14  filed an information, alleging that Mr. Terrazas and others known and unknown aided
15  and abetted one another in committing a misdemeanor assault in violation of 18 U.S.C.
16  § 111. Dkt. No. 30. With the complaint dismissed and the misdemeanor information
17  filed, the government's July 7, 2025, indictment deadline disappeared.
18     On July 11, 2025, Mr. Terrazas appeared for an arraignment on the misdemeanor
19  information. Dkt. No. 32. The case was assigned to this Court and jury trial was set for
20  August 12, 2025. *Id.*
21  **C.   Mr. Terrazas consents to proceed before a magistrate judge in his**
22     **misdemeanor case.**
23     After the case was assigned, this Court held status conferences on July 23, 2025,
24  and July 30, 2025, to discuss the case and upcoming trial. On July 29, 2025, ahead of
25  the second status conference, Mr. Terrazas filed a consent to proceed before a
26  magistrate judge (M-71). Dkt. No. 41. At the July 30 status conference, the Court asked
27  government counsel for his position on Mr. Terrazas' consent to proceed before a
28  magistrate judge. Government counsel stated that "[t]he Government's view is that it's

4

the defendant who has -- who has the right to elect to proceed before a magistrate judge" in his misdemeanor case. Dkt. No. 68 at 5. At no point did government counsel indicate that the government intended to nullify that consent by superseding and charging Mr. Terrazas with a felony.

This Court then referred Mr. Terrazas' case for assignment to a magistrate judge. The case was assigned to United States Magistrate Judge Karen L. Stevenson. Dkt. No. 42. Judge Stevenson's chambers emailed the parties and requested the parties' availability for a hearing on August 1, 2025. Government counsel responded that he was unavailable and requested a hearing the following week. *See* Ex. A at 1. In response, Judge Stevenson scheduled a hearing on the case for August 5, 2025, at 1:00pm. At that point, the trial date remained August 12, 2025.[1]

**D.    The government obtains an indictment charging Mr. Terrazas with a felony count of assault on a federal officer, nullifying his election to proceed before a magistrate judge and exponentially increasing his sentencing exposure.**

At 12:16pm on August 5, 2025, one week before the scheduled trial date and forty-four minutes before the hearing in front of Judge Stevenson was scheduled to begin, government counsel for the first time informed defense counsel and Judge Stevenson's chambers that the government had sought and obtained an indictment charging Mr. Terrazas with a felony violation of 18 U.S.C. § 111. Dkt. No. 48; Ex. B at 1. Government counsel indicated that the indictment had been obtained earlier that day and offered to coordinate with this Court's deputy to resume proceedings at a later date. *Id.* Because Mr. Terrazas now faced a felony charge rather than a misdemeanor, his case could no longer proceed before a magistrate judge. Given this development, Judge Stevenson vacated the hearing. Dkt. No. 46.

---

[1] The parties had filed a stipulation to continue the trial date from August 12, 2025, to September 23, 2025, on July 28, 2025. Dkt. No. 39. Because Mr. Terrazas had elected to proceed before a magistrate judge, this Court did not rule on the stipulation before requesting reassignment.

5

The government's escalation of the charge against Mr. Terrazas from a misdemeanor to a felony exponentially increased his potential sentencing exposure. Under the misdemeanor information, he faced a maximum sentence of 12 months' imprisonment. Now charged with a felony violation of 18 U.S.C. §§ 111(a)(1), (b), Mr. Terrazas faces a statutory maximum sentence of 240 months. 18 U.S.C. § 111(b). Notably, the indictment contains no facts or allegations beyond those in the complaint the government filed two months earlier. As with the complaint, the government does not allege in the indictment that Mr. Terrazas threw the piece of cinder block that allegedly injured a border patrol agent. *See* Dkt. No. 48. Instead, it relies on an aiding and abetting theory to connect the injury to Mr. Terrazas. *Id.*

### III. ARGUMENT

**A.    Due Process protects criminal defendants from government retaliation for exercising constitutional, statutory, and procedural rights.**

"To punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.'" *United States v. Goodwin*, 457 U.S. 368, 372 (1982) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978)). The Supreme Court has recognized that it is "patently unconstitutional" "for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights." *Bordenkircher*, 434 U.S. at 363 (internal citation and quotation marks omitted). Accordingly, "a prosecutor cannot increase the charges against a defendant in retaliation for the defendant's assertion of a statutory right." *Adamson v. Ricketts*, 865 F.2d 1011, 1017 (9th Cir. 1988) (en banc) (citing *Blackledge v. Perry*, 417 U.S. 21, 27 (1974)); *see also Goodwin*, 457 U.S. at 372 ("[W]hile an individual certainly may be penalized for violating the law, he just as certainly may not be punished for exercising a protected statutory or constitutional right.").

To assess this type of due process claim, the court determines whether or not the prosecution increased the charges based on the defendant's exercise of a constitutional, statutory, or procedural right. *See Blackledge*, 417 U.S. at 27-28. At the first step of the

1 analysis, a defendant does not have to establish that the prosecutor in fact acted
2 vindictively—e.g., "that the prosecutor acted in bad faith or that he maliciously sought
3 the new or enhanced charges." *United States v. Jenkins*, 504 F.3d 694, 699-700 (9th
4 Cir. 2007) (internal citations and quotation marks omitted); *see also Adamson*, 865 F.2d
5 at 1017 ("No actual showing of malice or retaliatory motive is necessary to assert a
6 vindictive prosecution claim.").

7 Rather, because "[m]otives are complex and difficult to prove[,]" *Goodwin*, 457
8 U.S. at 373, the defendant only needs to show that "the circumstances surrounding the
9 prosecutorial decision at issue create the appearance of vindictiveness," *Adamson*, 865
10 F.2d at 1017; *see also United States v. Groves*, 571 F.2d 450, 453 (9th Cir. 1978) ("it is
11 the *appearance of vindictiveness* rather than *vindictiveness, in fact*, which controls")
12 (emphasis in original). The en banc Ninth Circuit has held that such an appearance
13 arises from a superseding indictment "when the additional charges are based on the
14 same conduct that was the subject of the first indictment, when the same sovereign was
15 involved, and, most importantly, when the decision to file increased charges directly
16 followed the assertion of a procedural right." *Garza-Juarez*, 992 F.2d at 907 (citing
17 *Adamson*, 865 F.2d at 1018).

18 Once the defendant shows an appearance of vindictiveness, "vindictiveness will
19 be presumed" and "the burden shifts to the prosecution to rebut it by presenting
20 evidence of independent reasons or intervening circumstances which demonstrate that
21 the prosecutor's decision was motivated by a legitimate purpose." *Adamson*, 865 F.2d
22 at 1017, 1019. "The mere appearance of prosecutorial vindictiveness suffices to place
23 the burden on the government because the doctrine of vindictive prosecution 'seek[s] to
24 reduce or eliminate apprehension on the part of the accused' that [he] may be punished
25 for exercising [his] rights." *Jenkins*, 504 F.3d at 700 (quoting *United States v. Ruesga-*
26 *Martinez*, 534 F.2d 1367, 1369 (9th Cir. 1976)). This "prophylactic doctrine is
27 designed, in part, to prevent chilling the exercise of legal rights by other defendants
28 who must make their choice under similar circumstances in the future." *Id.* (internal

7

citations and quotation marks omitted). Thus, when the government creates the appearance of vindictiveness by elevating the charges against a defendant after he exercises a protected right, "the reason for the increase in the gravity of the charges must be made to appear" by the government. *Ruesga-Martinez*, 534 F.2d at 1369.

**B.  The circumstances and timing of the government's decision to charge Mr. Terrazas with a felony raises the appearance of vindictiveness.**

*Garza-Juarez* is on all-fours and controls this case: the Ninth Circuit there found three elements sufficient to trigger the presumption and shift the burden to the government. 534 F.2d at 907 ("same conduct," "same sovereign," and "directly followed the assertion of a procedural right"). All three are present here.

First, the felony indictment is "based on the same conduct that was subject" of both the initial complaint and the subsequent misdemeanor information. *Id.* It alleges no new facts or conduct beyond those contained in either earlier charging document. All three charging documents allege that Mr. Terrazas and others engaged in conduct resulting in a piece of cinderblock making contact with a border patrol agent's shin and causing injury. *See* Dkt. No. 1 at 4; Dkt. No. 30 at 1-2; Dkt. No. 48 at 1-2. Thus, the government had all of the information it would have needed to pursue the felony indictment when the complaint was filed as well as when the misdemeanor information was filed. *See Adamson*, 865 F.2d at 1018 (presumption of vindictiveness raised where the prosecution sought the death penalty against the defendant "for the very same conduct" for which it had earlier found a lesser charge and penalty appropriate).

Second, all three charging documents involved "the same sovereign," *Garza-Juarez*, 534 F.2d at 907—the federal government through the United States Attorney's Office, which made all of the charging decisions.

Third, and "most importantly," the "increased charge[] directly followed" Mr. Terrazas' "assertion of [his] procedural right" to proceed before a magistrate judge. *Id.* Mr. Terrazas filed the consent to proceed before a magistrate judge on July 29, 2025. Dkt. No. 41. Exactly one week later—and less than an hour before proceedings before

8

the magistrate judge were set to commence—the government informed the court and the defense that it had obtained a felony indictment. Dkt. No. 48. And by charging Mr. Terrazas with a felony, which cannot be tried before a magistrate judge, the government kicked the case back to the district court. Forty-four minutes before Mr. Terrazas' choice was to be realized for the first time, the government nullified that choice. The close temporal proximity between these two events and the fact that the government's escalation undid Mr. Terrazas' exercise of a procedural right creates the appearance that the indictment was responsive and retaliatory.

Further, the timing of these events within the broader context of the case compounds the appearance of vindictiveness. The government filed the complaint on June 8, 2025. Dkt. No. 1. Ten days later, the government elected to dismiss the complaint and filed a misdemeanor information on June 18, 2025. Dkt. No. 30. The case was set for trial on August 12, 2025, and remained set for that date when the government obtained the felony indictment on August 5, 2025. Thus, the government waited two months between filing the complaint and obtaining the felony indictment—despite the indictment containing no new facts or allegations beyond those in the complaint. During those two months: (1) the government affirmatively elected to dismiss the complaint and file a misdemeanor information, and (2) government counsel never raised the possibility that the charge could be elevated to a felony during any conferral between the parties or at the multiple status conferences held before this Court.

On the contrary, when this Court asked government counsel about Mr. Terrazas' choice to proceed before a magistrate judge, he did not (for example) alert the Court that referral to a magistrate judge was premature because a felony charge was contemplated or forthcoming. Instead, he agreed Mr. Terrazas had "the right to elect to proceed before a magistrate judge" in his misdemeanor case. Dkt. No. 68 at 5. At the very least, the government's silence in that moment strongly suggests its decision to upgrade was not a long time coming or the product of ongoing investigation—but

9

1  rather taken in the immediate aftermath of Mr. Terrazas' exercise of the right. Under
2  these circumstances, the government's choice to suddenly seek and obtain a felony
3  indictment just one week before the scheduled trial date and directly following Mr.
4  Terrazas' invocation of his right to proceed before a magistrate judge is inherently
5  suspect and clearly raises the appearance of vindictiveness.
6       This is precisely why courts apply a burden-shifting presumption as soon as
7  vindictiveness appears. It is not just to protect Mr. Terrazas' rights: it safeguards all
8  defendants who might make a similar choice in the future, but would be apprehensive
9  that the government could exact similar retribution. Once that appearance arises—and
10 puts all defendants on alert that they should be wary of exercising their rights—it
11 becomes the government's responsibility to dispel that appearance and its resulting
12 apprehension. *Jenkins*, 504 F.3d at 700 ("The 'prophylactic' doctrine is designed, in
13 part, to prevent chilling the exercise of legal rights by other defendants who must make
14 their choices under similar circumstances in the future." (cleaned up)).
15      The Ninth Circuit's decision in *Ruesga-Martinez* is particularly analogous and
16 instructive here. There, the government elevated the defendant's misdemeanor unlawful
17 entry charge under 8 U.S.C. § 1325 to a felony illegal entry under 8 U.S.C. § 1326 after
18 he refused to sign a document that would have waived his right to be tried in front of a
19 district judge. 534 F.2d at 1368. The Court found that "[w]hen the [defendant] refused
20 to sign the waiver form, the ensuing increase in the severity of the charges against him
21 created a sufficient appearance of vindictiveness" to "place the burden on the
22 prosecution." *Id.* at 1369. Because the record contained "no evidence that justifie[d] the
23 increase in the charges," the Court reversed and remanded with instructions that the
24 district court dismiss the indictment. *Id.* at 1369, 1371. In so holding, the Court
25 emphasized that the fact that there was sufficient evidence to support the felony charge
26 did not "justify an increase in the severity of the charges . . . because that evidence was
27 known to the prosecution before it brought the lesser charge." *Id.* at 1370.
28

10

The instant case bears a striking resemblance to *Ruesga-Martinez*, though the appearance of vindictiveness here is even stronger. As in *Ruesga-Martinez*, the government elevated the charge against Mr. Terrazas from a misdemeanor to a felony directly after he invoked a procedural and statutory right to choose whether to proceed before a district or magistrate court. In both cases, the government knew of the evidence it used to support the felony charge at the time it charged the misdemeanor. However, in Mr. Terrazas' case, the government's charging of a felony not only increased the severity of his case, it also entirely nullified his decision to proceed before a magistrate judge.

Mr. Terrazas anticipates the government may try to argue *Ruesga-Martinez* was overruled by the Supreme Court's subsequent decision in *Goodwin* and cannot be applied in this case. Not so. For starters, the Ninth Circuit, including the en banc Court, has continued to cite *Ruesga-Martinez* favorably in decisions examining vindictive prosecution claims. *See, e.g.*, *Adamson*, 865 F.2d at 1019 (en banc); *Jenkins*, 504 F.3d at 699-700, 701 n.3, 703. Further, the en banc panel in *Adamson* rejected a similar argument from the government about perceived limitations imposed by *Goodwin*:

> While *Goodwin* did limit the application of vindictive prosecution claims in cases involving pretrial procedures or plea negotiations, the Court there did not hold that vindictive prosecution can never occur in a pretrial setting. The Court in fact recognized "that a defendant in an appropriate case might prove objectively that the prosecutor's charging decision was motivated by a desire to punish him for something that the law plainly allowed him to do." [*Goodwin*, 457 U.S.] at 384 (footnote omitted); *see also United States v. Banks*, 682 F.2d 841 (9th Cir. 1982), *cert. denied*, 459 U.S. 1117 (1983) (suggesting that, though the Court in *Goodwin* refused to apply the presumption of vindictiveness to the pretrial actions of the prosecutor in that case, it did not foreclose the possibility in other circumstances). This circuit has also stated, post-*Goodwin*, that the presumption can arise from pretrial prosecutorial conduct. *See United States v. McWilliams*, 730 F.2d 1218, 1221 (9th Cir. 1984) (filing of initial indictment can provide basis of vindictive prosecution claim); *see also United States v. Heldt*, 745 F.2d 1275 (9th Cir. 1984) (suggesting increased charges filed in

11

response to motion to suppress could provide basis for vindictive prosecution claim).

865 F.2d at 1018 n.8. Thus, nothing in *Goodwin* overrules *Ruesga-Martinez*, nor does it prevent the presumption of vindictiveness from arising in the pretrial context.

## C. The government cannot rebut the presumption of vindictiveness.

"Once the presumption of vindictiveness is raised, the burden shifts to the prosecution to rebut it by presenting evidence of independent reasons or intervening circumstances which demonstrate that the prosecutor's decision was motivated by a legitimate purpose." *Adamson*, 865 F.2d at 1019 (citations omitted). The presumption of vindictiveness "may be overcome only by objective information in the record justifying the increased sentence." *Goodwin*, 457 U.S. at 374.

While the government should be afforded an opportunity to explain its decision, all available objective information suggests it will ultimately fail.[2]

## IV. CONCLUSION

For the foregoing reasons, Mr. Terrazas respectfully requests that the Court enter an order dismissing the indictment.

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: September 29, 2025     By  /s/ Ryan Shelley
GABRIELA RIVERA
RYAN SHELLEY
Deputy Federal Public Defenders
Attorneys for JACOB DANIEL TERRAZAS

---

[2] Should the government attempt to justify the decision to charge Mr. Terrazas with a felony in its response, Mr. Terrazas requests an evidentiary hearing to test that justification. *See Adamson*, 865 F.2d at 1020 (reversing and remanding for an evidentiary hearing where the defendant "made an initial showing to raise a presumption of vindictiveness" and the government's proffered reasons did not definitively rebut it).

12

**DECLARATION OF RYAN SHELLEY**

I, Ryan Shelley, declare:

1. I am a Deputy Federal Public Defender in the Central District of California appointed to represent Jacob Daniel Terrazas in this action.

2. Attached as Exhibit A is a true and correct copy of an email exchange from July 31, 2025, between AUSA Eric Mackie and Courtroom Deputy Valencia Munroe.

3. Attached as Exhibit B is a true and correct copy of an email sent on August 5, 2025, by AUSA Mackie to Judge Stevenson's chambers and defense counsel.

4. Since August 20, 2025, defense counsel has conferred several times with AUSAs Eric Mackie and Frances Lewis about this motion. The government has not indicated an intention to dismiss the indictment for the reasons set out in the motion.

5. I certify that this brief contains approximately 3,412 words, which complies with the word limit of Local Rule 11-6.1.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 29, 2025, at Los Angeles, California.

                                        */s/ Ryan Shelley*
                                        RYAN SHELLEY