TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
ERIC L. MACKIE (Cal. Bar No. Pending)
Assistant United States Attorney
BRENDA N. GALVÁN (Cal. Bar No. 296456)
Assistant United States Attorney
General Crimes Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-3289 / 4850
    Facsimile: (213) 894-0141
    E-mail:    eric.mackie@usdoj.gov
                brenda.galvan@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>           v.<br><br>JACOB DANIEL TERRAZAS,<br><br>        Defendant. | No. 2:25-cr-00500-PA<br><br>GOVERNMENT'S SENTENCING MEMORANDUM<br><br>Hearing Date: April 6, 2026<br>Hearing Time: 8:30 AM<br>Location:    Courtroom of the<br>                Hon. Percy Anderson |

Plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California and Assistant United States Attorneys Eric L. Mackie and Brenda N. Galván, hereby files this Sentencing Memorandum for defendant Jacob Daniel Terrazas.

//

//

This Memorandum is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: March 23, 2026          Respectfully submitted,

                               TODD BLANCHE
                               Deputy Attorney General

                               BILAL A. ESSAYLI
                               First Assistant United States
                               Attorney

                               ALEXANDER B. SCHWAB
                               Assistant United States Attorney
                               Acting Chief, Criminal Division


                               /s/ Eric L. Mackie
                               ERIC L. MACKIE
                               BRENDA N. GALVÁN
                               Assistant United States Attorneys

                               Attorneys for Plaintiff
                               UNITED STATES OF AMERICA

2

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.   INTRODUCTION**

On June 7, 2025, during a protest near the Homeland Security Investigations ("HSI") facility in Paramount, California, defendant Jacob Daniel Terrazas did not flee when law enforcement declared an unlawful assembly and dispersed the crowd.  He stayed.  He concealed himself behind a tree line with a small group of aggressors, retrieved broken pieces of cinderblock, and repeatedly hurled them across the street at a line of United States Border Patrol agents who were protecting federal personnel and property.  The agents were conducting lawful crowd-control operations.  Defendant was not.  He was an aggressor -- one who positioned himself, chose his weapon, and launched it.

One of those cinderblocks struck Border Patrol Agent L.C. in the shin, causing bruising and bleeding.  Defendant was identified by the injured agent, arrested the same day, and ultimately pled guilty to Simple Assault on a Federal Officer, in violation of 18 U.S.C. § 111(a)(1).

For the reasons set forth below, the government respectfully recommends that the Court impose:

- 12 months' imprisonment (the advisory Guidelines range, capped at the statutory maximum);

- One year of supervised release;

- No restitution;

- No fine; and

- The mandatory $25 special assessment.

A sentence of 12 months' imprisonment is sufficient, but not greater than necessary, to comply with 18 U.S.C. § 3553(a).  It reflects the seriousness of a violent assault on federal law enforcement officers, promotes respect for the law, affords adequate deterrence, and protects the public -- while fully crediting defendant's lack of prior criminal history and his acceptance of responsibility.

**II.   STATEMENT OF FACTS**

    **A.   The Offense**

On June 7, 2025, a protest gathered near the HSI facility in Paramount, California, sparked by a mistaken belief that an immigration enforcement operation was occurring at a nearby Home Depot.  What began as a demonstration escalated into a violent confrontation.  Law enforcement declared an unlawful assembly and deployed less-than-lethal munitions to disperse the crowd.  Most protesters departed.  Defendant remained.

Defendant joined a small group of aggressors who concealed themselves behind bushes, trees, and a makeshift shield and advanced toward the Border Patrol skirmish line.  At one point, a man wearing a balaclava-style mask retrieved a pallet of cinderblocks from the rear of the nearby Home Depot, smashed it on the ground, and used the pieces to continue the assault.  Home Depot surveillance video shows defendant, from behind cover, gesturing to the man who smashed the cinderblock -- signaling him to hand over a piece.  Defendant then took pieces of the broken cinderblock, repositioned himself behind a tree, and threw them across the street at Border Patrol agents standing guard at the entrance to federal property.

The video evidence leaves no ambiguity about defendant's role. He is seen crouching behind a pickup truck, retrieving debris, moving to a better angle behind tree cover, and launching cinderblock pieces at uniformed officers. (Exhibit A at 3:24:14 to 3:26:06 p.m.) He was not surrounded. He was not subjected to any use of force. He advanced, armed himself, and attacked.

Defendant and those he aided and abetted struck at least two agents. Border Patrol Agent L.C. was hit in the right shin. The cinderblock tore through his pants and left him bleeding and bruised. Defendant was arrested that same day after Agent L.C. identified him as one of the aggressors.

### B.    Procedural History

On August 5, 2025, a grand jury returned a single-count felony indictment charging defendant with assault on a federal officer using a deadly and dangerous weapon resulting in bodily injury, in violation of 18 U.S.C. §§ 111(a)(1) and (b), and aiding and abetting, in violation of 18 U.S.C. § 2(a). (Dkt. 48.) On January 20, 2026, defendant pled guilty to a superseding single-count First Superseding Indictment charging the lesser offense of Simple Assault on a Federal Officer, in violation of 18 U.S.C. § 111(a)(1). (PSR ¶ 1.).

### III. SENTENCING GUIDELINES CALCULATION

The government agrees with the PSR's Guidelines calculation. The total offense level is 13 and the criminal history category is I. (PSR ¶¶ 35, 42.) The calculation is as follows:

- Base Offense Level 10, pursuant to U.S.S.G. § 2A2.4(a), as stipulated in the plea agreement. (PSR ¶ 21.)

- +3 because the offense involved the use of a dangerous weapon capable of inflicting death or serious bodily injury -- a cinderblock -- and the victim sustained

3

physical contact.  U.S.S.G. § 2A2.4(b)(1).  (PSR ¶¶ 22-24.)

- +2 because the victim sustained bodily injury. U.S.S.G. § 2A2.4(b)(2).   Agent L.C. suffered bruising and bleeding from the cinderblock impact.  (PSR ¶¶ 25-27.)

- −2 for acceptance of responsibility.   U.S.S.G. § 3E1.1(a).  (PSR ¶ 32.)

Defendant has no prior criminal history and falls in Criminal History Category I.  (PSR ¶¶ 41-42.)  The advisory Guidelines range is 12 to 18 months.  However, because the statutory maximum for a violation of 18 U.S.C. § 111(a)(1) is one year, the operative Guidelines sentence is 12 months.  U.S.S.G. § 5G1.1(c)(1); (PSR ¶ 73.)

The maximum fine is $100,000. 18 U.S.C. § 3571(b); (PSR ¶ 80.) The fine range under the Guidelines is $5,500 to $55,000.  (PSR ¶ 82.) A special assessment of $25 is mandatory.  18 U.S.C. § 3013; (PSR ¶ 81.).

**IV.   APPLICATION OF THE § 3553(a) FACTORS**

**A.    Nature and Circumstances of the Offense**

The nature of this offense is serious.  Defendant did not accidentally come into contact with law enforcement.  He chose -- deliberately and methodically -- to assault officers who were performing their lawful duties to protect federal personnel and property.  After most protesters heeded the unlawful assembly declaration and left, defendant stayed.  He concealed himself, armed himself with broken pieces of cinderblock, positioned himself for maximum effect, and attacked.

The conduct was organized and purposeful.  Surveillance video shows defendant coordinating with other aggressors, gesturing to the

4

man who smashed the cinderblock to pass him pieces, repositioning behind cover, and repeatedly throwing. This was not a single impulsive act. It was a sustained physical assault against uniformed federal officers.

The victim in this case, Agent L.C., was present at the HSI facility to protect federal personnel and property -- not to confront protesters. He was struck in the shin by a cinderblock fragment, bloodying his leg through his uniform pants. A cinderblock thrown at a person's body is capable of causing death or serious injury if it strikes a vital area. The fact that Agent L.C.'s injury was not more severe does not diminish the violence of the attack.

The Guidelines enhancements for use of a dangerous weapon and resulting bodily injury appropriately capture the gravity of this conduct. A custodial sentence is necessary to reflect that seriousness and to promote respect for the law. This is not a case where the nature of the charged misdemeanor militates toward leniency.

**B.    History and Characteristics of Defendant**

Defendant is 31 years old, a United States citizen, and was born and raised in Paramount, California. (PSR ¶ 47.) He was raised by his mother as a single parent, with limited financial resources, alongside five siblings. (PSR ¶¶ 48-49.) He has maintained employment since turning 18, and since August 2025, has held a full-time position at Purolator International. (PSR ¶ 64.) He has a 13-year-old son and shares custody with his former partner. (PSR ¶ 55.) He has no prior criminal history. (PSR ¶¶ 37-42.)

The government acknowledges that defendant asserts he has recently been diagnosed with schizophrenia, and that he is currently

5

receiving medication and weekly therapy for the first time.  (PSR ¶ 61.)  The government does not minimize those circumstances.  It notes, however, that at booking on June 7, 2025 — the same day as the offense — jail medical staff recorded that defendant denied any mental health issues, while affirmatively reporting his asthma.  (See Exhibit B.)  That contemporaneous record is not necessarily inconsistent with a later diagnosis, but it does temper the weight to be given to the post-arrest narrative that untreated schizophrenia meaningfully drove his conduct that day.

At bottom, defendant's mental health history does not explain the deliberate, coordinated nature of his conduct on June 7, 2025. The video evidence shows him making purposeful decisions over an extended period: hiding, coordinating, retrieving debris, repositioning, and throwing.  Whatever internal struggles defendant faced that day, his behavior on the surveillance footage reflects goal-directed action, not a dissociative episode.  Defendant himself told the probation officer that he "came across the protest" and was at the "wrong place at the wrong time."  (PSR ¶ 17.)  That characterization is difficult to reconcile with the footage.

The government also notes, with respect to defendant's claim that he suffered a head concussion during his arrest: jail medical records from Santa Ana Jail reflect that at the time of booking on June 7, 2025, defendant presented with only superficial abrasions and expressly denied any pain or discomfort.   (Exhibit C, page 2.) During defendant's initial medical screening at the Santa Ana Jail, his level of consciousness was noted as "alert," and "no" was4 indicated for "traumatic brain injury/head injury."  (Exhibit C, pages 1 and 4.) It was not until five days later -- after meeting

6

with defense counsel -- that defendant for the first time reported being struck in the head with a baton.  The treating nurse documented the inconsistency: defendant stated he had not known he was hit until counsel showed him a video of the incident.  No palpated or visible swelling was noted in the records.  (Exhibit D, pages 4-5.)  The PSR appropriately notes that this claim has not been verified.  (PSR ¶ 60 n.6.)  The government respectfully submits that the Court should not treat this unverified, inconsistently-reported claim as an established mitigating fact.

### C. Seriousness of the Offense, Respect for the Law, and Just Punishment

Assaulting federal law enforcement officers is a serious federal crime.  The officers present at the HSI facility on June 7, 2025 were not adversaries -- they were agents performing crowd-control duties to protect a federal facility from a crowd that had turned violent. Defendant chose to target them with heavy projectiles capable of causing serious injury.

A custodial sentence is necessary to reflect the gravity of this offense and to promote respect for the law.  A non-custodial sentence -- or a sentence meaningfully below the statutory maximum -- would fail to communicate the seriousness with which the federal justice system regards violent attacks on law enforcement.  Defendant pleaded guilty to a misdemeanor; the government has fully credited that plea. But the underlying conduct -- a sustained, coordinated assault with dangerous projectiles against uniformed federal officers -- was serious, and the sentence should reflect this fact.

### D. Deterrence

7

General deterrence is a significant consideration here. When protesters turn to violence (e.g., throwing cinderblocks at law enforcement, smashing pallets of construction materials into weapons, advancing behind shields on officers conducting lawful crowd-control operations), they do not just injure the agents in their path.  They transform what should be a protected exercise of First Amendment rights in a public forum into a violent confrontation that endangers everyone present and invites a law enforcement response that forecloses the very space in which peaceful protest occurs.  The First Amendment guarantees the right to assemble and to speak.  It does not guarantee the right to assault.  And when violence infiltrates a demonstration, it drowns out the voices of those who came to do nothing more than make themselves heard.

A meaningful custodial sentence sends a message that this Court will not tolerate the conversion of public protest into violent attack, not because protest is disfavored, but because violence is. Deterring that conduct protects the integrity of public discourse, not just the safety of the officers targeted.  Those who might consider following defendant's example should understand that the federal justice system distinguishes sharply between the exercise of constitutional rights and the commission of a federal crime, and that the latter will be punished accordingly.

A 12-month custodial sentence makes clear that throwing cinderblocks at law enforcement officers -- regardless of the surrounding political context -- will result in meaningful punishment.

**E.   Protection of the Public**

Defendant has no prior record and no identified pending criminal conduct.  (PSR ¶¶ 43-45.)  The government does not contend that he poses an ongoing danger to the community in the ordinary sense.  However, the offense involved physical violence against law enforcement officers with weapons capable of causing serious harm.  A custodial sentence, followed by a period of supervised release, appropriately ensures accountability and monitoring during defendant's reentry into the community.

**V.   SUPERVISED RELEASE**

The Court may impose up to one year of supervised release.  18 U.S.C. § 3583(b)(3); (PSR ¶ 75.)  The government recommends a one-year term.

Supervised release will serve the purposes of deterrence and community protection during defendant's reintegration.  Defendant has only recently begun mental health treatment for a newly-diagnosed schizophrenia condition that -- by his own account -- contributed to his state of mind on the day of the offense.  (PSR ¶ 61.)  Supervised release will provide an important mechanism to ensure he continues treatment and remains accountable to the conditions of the plea agreement -- including the requirement that he not come within 100 feet of a federal building or federal law enforcement officer engaged in official duties without prior permission of the Probation Office.  (PSR ¶ 4(ii).)  Continued monitoring during this period is appropriate and in the interest of justice.

**VI.   RESTITUTION, FINE, AND SPECIAL ASSESSMENT**

Although restitution is generally mandatory under 18 U.S.C. § 3663A, the government does not seek a restitution order in this case.  Agent L.C. has not submitted a victim restitution statement

9

identifying any out-of-pocket loss, and the government is not aware of any documented economic harm that would support a restitution award at this time.

Given defendant's limited financial resources -- he has reported that substantially all of his income goes to supporting his mother and son -- the government does not recommend a fine. (PSR ¶¶ 68-69.)

The Court must impose the mandatory $25 special assessment.  18 U.S.C. § 3013; (PSR ¶ 81.)

**VII.  CONCLUSION**

For the foregoing reasons, the government respectfully recommends that defendant be sentenced to:

- 12 months' imprisonment;

- One year of supervised release;

- No restitution;

- No fine; and

- The mandatory $25 special assessment.

This sentence is sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a).

10